UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

FILADELFO RODRIGUEZ-SANCHEZ,

Petitioner,

v.

PATRICK DIVVER, San Diego Field Office Director, Enforcement and Removal Operations, United States Immigration and Customs Enforcement (ICE); CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center; KRISTI NOEM, Secretary of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY (DHS); PAMELA BONDI, Attorney General of the United States; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW (EOIR); DAREN K. MARGOLIS Director EOIR; in their official capacities,

Respondents.

Case No.: 3:25-cv-02868-JES-AHG

**ORDER GRANTING PETITIONER'S MOTION FOR ATTORNEYS' FEES AND COSTS**

**[ECF No. 14]**

Pending before the Court is Petitioner Filadelfo Rodriguez-Sanchez's Motion for Attorneys' Fees and Costs pursuant to the Equal Access to Justice Act ("EAJA"). ECF No. 14 ("Mot."). Respondents filed an opposition and Petitioner filed a reply. ECF Nos. 18 ("Opp'n"), 19. After due consideration and for the reasons discussed below, the Court **GRANTS** Petitioner's Motion for Attorney Fees and Costs.

## I. BACKGROUND

### A. Factual Background

Petitioner is a Mexican citizen and national who has lived in the United States for over twenty years. ECF No. 1 ("Pet.") ¶ 12. On September 12, 2025, Petitioner was arrested by Florida State Troopers following a traffic stop in Orange County, Florida, that Petitioner alleges was solely based on his race. *Id*. ¶¶ 24. After Petitioner was booked, Florida State Troopers transferred him into Respondents' custody. *Id.* ¶. Respondents initiated removal proceedings against Petitioner for having entered the United States without admission or parole and later transferred him to the Otay Mesa Detention Center, where he was subjected to mandatory detention. *Id.* ¶¶ 25-27.

DHS reinterpreted 8 U.S.C. § 1225(b)(2)(A) to declare that all individuals present in the United States without permission or parole were subject to mandatory detention. *See Mendoza v. Raycraft*, No. 4:25cv2183, 2025 WL 3157796, at *4 (N.D. Ohio Nov. 12, 2025). DHS' policy change prevented Petitioner from receiving a bond hearing under Section 1226(a), and in turn, compelled him to contest the lawfulness of his detention with this Court.

### B. Procedural Background

On October 23, 2025, Petitioner filed a habeas petition pursuant to 28 § U.S.C. 2241 ("Petition") contesting the lawfulness of his detention. *See generally* Pet. October 31, 2025, the Court held a hearing in which it: (1) granted the Petition as to Count One and Two (i.e., violation of the Immigration and Nationality Act (the "INA") and the Administrative Procedure Act ("APA"), respectively, for detaining Petitioner under Section 1225(b)(2)), and denied as moot Counts Three and Four, and the TRO. ECF No. 9; and denied

Petitioner's request for attorneys' fees and costs under the EAJA and common law. ECF No. 9; *see* 28 U.S.C. §§ 2412(b), (d)(1)(a). Ruling from the bench, the Court denied Petitioner's request for attorneys' fees because it found that the Petition was not a "civil action" under 28 U.S.C. 2412(a)(1). *Id.* On December 2, 2025, Petitioner filed a Motion for Reconsideration of the Court's decision to deny the request for attorney fees and costs under the EAJA. ECF No. 11. The Court granted the motion for reconsideration and set a briefing schedule for Petitioner to file a motion for award of attorneys' fees and costs. ECF No. 12.

## II. LEGAL STANDARD

The United States is, generally, immune from civil liability. *United States v. Testan*, 424 U.S. 392, 399 (1976). Thus, a prevailing party may be awarded attorneys' fees and costs only when sovereign immunity has been expressly waived by statute. *See Ardestani v. INS*, 502 U.S. 129, 137 (1991); *Lehman v. Nakshian*, 453 U.S. 156, 160-61 (1981). The EAJA allows a court to award attorney fees and costs to the prevailing party of any civil action brought against the United States, unless the government's position is substantially justified or special circumstances would make an award unjust. 28 U.S.C. § 2412(d)(1)(A). The United States is liable for fees and expenses to the same extent as any other party under common law or applicable statutes. 28 U.S.C. § 2412(b).

## III. DISCUSSION

### A. Petitioner's Counsel is Entitled to Recovery of Fees

#### 1. Petitioner's Petition Qualifies as a Civil Action under EAJA

The EAJA grants fees and costs exclusively in "civil action[s]." 28 U.S.C. § 2412(d)(1)(A). Congress enacted the EAJA to ensure that plaintiffs seeking vindication of their personal rights would not be deterred from pursuing meritorious claims by the costs of litigation. *See e.g., In re Petition of Hill*, 775 F.2d 1037, 1040 (9th Cir. 1985) (explaining the dual purpose of the EAJA: to remove financial disincentives for individuals and encourage challenges to improper government conduct); *Boudin v. Thomas*, 732 F.2d 1107, 1112–13 (2nd Cir. 1983) ("[t]he EAJA was passed in part to ensure that certain individuals

. . . would not be deterred from contesting unreasonable government action simply because the amount of money involved would not make hiring a private attorney cost effective"). To determine whether a suit is a "civil action" for purposes of awarding fees and costs under the EAJA, the court must look at the substance of the remedy sought, not just the labels attached. *Hill*, 775 F.2d at 1040-41. The Ninth Circuit has held habeas corpus claims qualify as civil actions under the EAJA when the petitioner is challenging the underlying policy that resulted in their detention. *Hill*, 775 F.2d at 1040-41.

In *Hill*, petitioner was excluded from entering the United States under the INA. *Hill*, 775 F.2d at 1039. *Hill* was referred to exclusion proceedings after he voluntarily confessed to being homosexual, which was a basis for exclusion under the INA at the time. *Id*. *Hill* filed a habeas corpus petition pursuant to 28 U.S.C § 2241 following a Board of Immigration Appeals ("BIA") decision, in which it held that an alien who "admits homosexuality fails to carry his burden of establishing admissibility under the [INA]." *Id*. After prevailing in his habeas claim, *Hill* filed a motion for fees under the EAJA arguing that the litigation conferred a substantial benefit on an ascertainable class. *Id*. at 1039–40.

There, the government argued that Congress did not intend for the EAJA to allow such awards in habeas cases. *Id*. The Ninth Circuit held that this action qualified as a "civil action," under the EAJA, as *Hill* was not merely contesting his custody. *Id*. at 1040–41. Rather, he was challenging the government's policy of excluding homosexuals without a medical certificate as unlawful. *Id.*

The Ninth Circuit treats habeas petitions as "civil actions" when the challenge extends beyond an individual's detention and contests a policy affecting a broader class of similarly situated individuals. *Id.* at 1040–41. Petitioner's claim falls squarely within that category, as his detention stemmed from DHS's policy, that also served as the basis for the BIA's interpretation of the INA in *Yajure-Hurtado* which made all people present without permission or parole ("PWAP") subject to mandatory detention under 8 U.S.C. § 1225(b). This Court, like many others, concludes that unlike in *Yajure-Hurtado*, § 1226(a)—not §

1225(b)—applies to noncitizens who are PWAP. *See Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164-65 (9th Cir. 2026).

Petitioner's habeas claim was not just a vindication of his individual rights, but a challenge to the underlying policy set forth by *Yajure-Hurtado* which has led to the wrongful detention of many PWAP. As in *Hill*, Petitioner had little financial incentive to challenge the government's actions here. Under Ninth Circuit law, this challenge appropriately constitutes a "civil action" under the EAJA. District courts within this Circuit have consistently reached the same conclusion. *See, e.g.*, *Ortiz Landazuri v. Mullin*, No. 5:26-cv-01419-WLH-DFM, 2026 WL 2326095, at *1 (C.D. Cal. Aug. 11, 2026) (applying the EAJA to an immigration habeas petition challenging re-detention under § 1226(a)); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1161 (S.D. Cal. 2025) (granting habeas relief to a petitioner whose re-detention violated due process); *see also Doe v. Chestnut*, No. 1-25-cv-01372-CDB (HC), 2026 WL 1459808, at *2 (E.D. Cal. May 25, 2026) (concluding that "the better interpretation of the term 'any civil action' in the EAJA is that it unambiguously includes habeas proceedings challenging immigration detention").

The Court notes that the Supreme Court has granted certiorari in *Palacios v. Liggins*, No. 25-1223, __ S.Ct. __, 2026 WL 1855057 (June 29, 2026), which will address whether the EAJA applies to habeas proceedings. The Court declines to hold this matter in abeyance pending that decision. Binding Ninth Circuit precedent in *Hill* controls, and district courts within this Circuit have uniformly continued to award EAJA fees in immigration habeas matters notwithstanding the pending certiorari grant. *See, e.g.*, *Ortiz Landazuri*, 2026 WL 2326095, at *2 (declining to stay pending *Palacios*).

**2. Petitioner is the Prevailing Party**

Courts determine whether an applicant is the "prevailing party" for purposes of the EAJA by evaluating the degree of success obtained. *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 160 (1990). The Supreme Court has held that a plaintiff is considered the prevailing party if on the merits of their claim, they received at least some relief. *Farrar v. Hobby*, 506 U.S. 103, 111 (1992) (citing *Hewitt v. Helms*, 482 U.S. 755, 760 (1987)). A party need

not succeed on every claim or issue to be considered the prevailing party. *Carbonell v. I.N.S.*, 429 F.3d 894, 898–900 (9th Cir. 2005). But, there must be a determination of the substantial rights of the parties. *See id* (citing *Richard S. v. Dept. of Dev. Servs. of State of California*, 317 F.3d 1080, 1087 (9th Cir. 2003)) (a material alteration occurs when one party is required to confer a benefit on the other that it otherwise would not have provided).

The Court granted the Petition. ECF No. 9. This decision prevented Respondents from subjecting Petitioner to mandatory detention and required them to provide him with a bond hearing before an immigration judge. Mot. at 8; *see Carbonell,* 429 F.3d at 898–900. This is a judicially sanctioned material alteration because absent the order, Respondents would never have undertaken either act, which greatly benefited Petitioner. *Farrar,* 506 U.S. at 111.

**3. Respondents' Conduct was not Substantially Justified**

Under the EAJA, a court may award attorney fees and costs unless the government's position was substantially justified or existing special circumstances would make the award unjust. 28 U.S.C. § 2412(d)(1)(A); *Hill*, 775 F.2d at 1042. The government has the burden of demonstrating substantial justification, and when reviewing the government's position, during litigation and the agency action that gave rise to the litigation, the Court must consider the totality of circumstances. *See Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005); *Meier v. Colvin,* 727 F.3d 867, 870 (9th Cir. 2013).

The test of whether the government action is substantially justified is essentially one of reasonableness, both in law and fact. *Leagues of Women Voters of California v. F.C.C.*, 798 F.2d 1255, 1257 (9th Cir. 1986). Reasonableness does not mean the government must be correct, but that their position did not contravene clearly established law. *Hill*, 775 F.2d at 1042 (citing *United States v. First Nat'l Bank of Circle*, 732 F.2d 1444, 1447 (9th Cir. 1984)); *Meza-Vasquez v. Garland*, 993 F.3d 726, 729 (9th Cir. 2021). The prevailing party need not demonstrate that the government was entirely unreasonable, only that some portion of their position was unreasonable. *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 161 (1990). Furthermore, where an agency action is found unlawful and

lacking in reasonable, substantial, and probative evidence in the record, "it will be only a decidedly unusual case in which there is substantial justification under the EAJA." *Thangaraja*, 428 F.3d at 874 (internal citations omitted).

**B. DHS' Policy Change Abruptly Departed from Precedent and is Unsupported by INA's Plain Text**

Petitioner claims that the underlying decision leading to their detention is an unreasonable and professionally irresponsible interpretation of the law. Mot. at 16. In July of 2025, DHS issued a memo requiring that "all applicants for admission [are] to be mandatorily detained during removal proceedings pursuant to § 1225(b)(2). *Garcia v. Noem*, 803 F. Supp. 3d 1064, 1070 (S.D. Cal. Sept. 3, 2025) (internal citations omitted). Shortly after, the BIA in *Yajure-Hurtado* held that anyone present without admission was subject to mandatory detention under section 1225(b), regardless of how long they have been in the country. *Matter of Yajure-Hurtado*, 29 I & N Dec 216, 227–28 (2025).

For decades prior to *Yajure-Hurtado*, section 1225(b) was interpreted to apply to those seeking admission into the United States, not those who have been present in the country for longer than two years without permission. *See e.g., Jennings v. Rodriguez,* 583 U.S. 281, 296 (2018) ("[section] 1225(b) applies primarily to aliens seeking entry into the United States"); *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 109 (2020) (citing 8 §§ 1225 (b)(1)(A)(i), (iii)(I)-(II)) (interpreting as an applicant must be removed if they lack valid entry documents, lack two years of continuous presence in the U.S., and fall within an area designated by DHS). Those who have been present in the country for longer than two years, as is the case with Petitioner, were traditionally subject to discretionary detention. 8 U.S.C. § 1226(a)(1)-(2). This was the understanding of the law before *Yajure-Hurtado* changed longstanding precedent overnight, seemingly without textual support. *See Ruiz v. Warden of the Golden State Annex Det. Facility*, No. 1:26-cv-0976-DC-JDP, 2026 WL 915016, at *4 (E.D. Cal. April 3, 2026) ("find[ing] that the government's interpretation runs contrary to the DHS's longstanding practice prior to July 2025"); *see also Esquivel-Ipina v. LaRose,* 812 F. Supp. 3d 1073, 1081 (S.D. Cal. 2025)

(holding that the plain text of section 1225(b)(2)(A) does not apply to Petitioner, a nonresident who has been present in the United States since 2013); *Pinchi v. Noem*, 813 F. Supp. 3d 973, 1032-1036 (N.D. Cal. 2025) (rejecting the BIA's broad reading of section 1225(b) because it is inconsistent with the statute and would wrongly expand mandatory detention to nearly all PWAP).

Additionally, Petitioner points to the Laken Riley Act (hereinafter, "LRA") as support that the BIA in *Yajure-Hurtado* misinterpreted the legislative history. Mot. at 18. The LRA amended section 1226 by carving out exceptions to discretionary detention under 1226, imposing mandatory detention for certain criminal offenses committed by PWAP. 8 U.S.C. § 1226(c). The LRA shows that Congress understood that those PWAP were eligible for bond hearings under section 1226(a). *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1323 (W.D. Wash. Sept. 30, 2025) ("[a] plain reading of this exception implies that the default discretionary bond procedures in section 1226(a) apply to noncitizens who . . . 'are present in the [U.S.] without being admitted or paroled'"). As Petitioner argues, and the Court agrees, section 1226(c) presupposes that individuals PWAP fall within the discretionary detention framework. Mot. at 18; *Rodriguez Vazquez*, 802 F. Supp. 3d at 1323. Otherwise, the amendment would be pointless because individuals PWAP would already be subject to mandatory detention under section 1225(b). *Rodriguez Vazquez*, 802 F. Supp. 3d at 1323.

DHS's conduct prior to litigation was not substantially justified. The decision in *Yajure-Hurtado* was an abrupt departure from longstanding precedent and is inconsistent with the plain language of section 1225(b). *See Gimenez Gonzalez v. Raycraft,* 807 F. Supp. 3d 755, 761 (E.D. Mich. Oct. 27, 2025). By its plain terms, the statute applies to those seeking admission to the United States, not those already present without permission or parole. *Esquivel-Ipina*, 812 F. Supp. 3d at 1080-81.

//

//

//

**C. Respondents' Jurisdictional Argument Lacked Merit and is not Substantially Justified**

In the Return to the Petition, Respondents claimed that the Court lacked jurisdiction under 8 USC §§ 1252(b)(9) & (g). ECF No. 7, "Return" at 2–5. The Court finds this is also not substantially justified. Respondents rely on Justice Thomas's concurring opinion in *Jennings v. Rodriguez* for the proposition that the Court lacks jurisdiction under 8 U.S.C. § 1252(b)(9) and § 1252(g). Return at 5. As a threshold matter, concurring opinions are not binding authority; they are persuasive at best. *Duarte v. City of Stockton,* 60 F.4th 566, 574 (9th Cir. 2023) (stating that concurring opinions have no precedential authority and are to be disregarded when in conflict with binding precedent).

More troubling still, the majority opinion in that same case stands for the opposite proposition. *See Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018). Justice Alito, writing for the Court in *Jennings*, held that these provisions do not bar judicial review, as it would be too burdensome to pack all the claims an alien may have into their removal hearing. *Id.*

Respondents have not met that burden here. By late 2025, district courts within this Circuit had repeatedly ruled that summarily re-arresting and re-detaining a law-abiding noncitizen without notice or an individualized explanation of changed circumstances violates due process. *See Constantinovici v. Bondi*, 806 F. Supp. 3d at 1161 (finding that ICE violated due process by revoking release without complying with applicable statutory and regulatory procedural safeguards); *see also Ortiz Landazuri*, 2026 WL 2326095, at *3 (finding respondents' position not substantially justified where ICE re-detained petitioner over a year after releasing her on her own recognizance without prior notice or individualized explanation of changed circumstances, and where respondents elected not to oppose the constitutional claims on the merits). Their conduct, both before and during litigation, reflects an unpersuasive and strained reading of settled law.

//

//

//

### D. Petitioner is Entitled to the Statutory Rate and not the Market Rate of Damages

#### 1. EAJA Statutory Rate

Under the EAJA, fees are calculated using the lodestar method, which is calculated by multiplying the reasonable hourly rate by the reasonable number of hours. *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983). Reasonable attorney fees shall be based on the market rate for the kind of services provided but shall not exceed $125 an hour, unless the Court determines a higher fee is justified. 28 U.S.C. § 2412(d)(2)(A). The Court may award a higher rate if justified by an increase in the cost of living as determined by the consumer price index ("CPI"). *Thangaraja*, 428 F.3d at 877. The $125 rate as prescribed by the statute is adjusted for inflation by comparing current price levels under the CPI to what prices would have been in March of 1996. *Id.* The Ninth Circuit has set the maximum statutory rate for work performed in 2025, at $258.46 an hour.[1]

The party requesting attorney fees should submit evidence that supports the sought-after hours and associated hourly rates. *Hensley,* 461 U.S. at 433–34. And where they do not, the Court may reduce fees accordingly. *Id.* The Court should exclude any fees that are excessive, redundant, or otherwise not reasonably expended. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). Attorneys should not bill for clerical or secretarial work that could be done by non-lawyers, at a much lower hourly rate. *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992); *Missouri v. Jenkins*, 491 U.S. 274, 288 (1989). While a court has broad discretion in awarding fees, the court must provide a *clear and concise* explanation for its determination. *Hensley*, 461 U.S. at 437.

In the Motion, Petitioner's counsel submitted time records reflecting the following: 36.24 hours of attorney time, 1.05 hours of certified paralegal time, and $64.33 in additional costs. ECF No. 14-2 at 1-2. These costs, if reasonable, would amount to a total

---

[1] U.S. CT. FOR THE NINTH CIR., *Statutory Maximum Rates Under the Equal Access to Justice Act*, (last visited April 2026) https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/.

award of $9,588.42, at the applicable attorney statutory rate and paralegal market rate. Respondents, however, argue that a 20% reduction in the attorney hours claimed is warranted because certain entries are for clerical or administrative work. Opp'n at 4–5. Respondents specifically claim that expenses for "filing the petition for habeas" and "calendared due dates" should be considered overhead expenses, and not billed as attorney fees. *Id.* Respondents also take issue with a submitted charge for observing oral arguments of another attorney in this matter. *Id.* Such expenditures, in addition to the internal meetings between the three attorneys that are staffed on this matter, are not reasonably necessary to the litigation, according to Respondents. *Id.*

The Court agrees that filing a habeas petition and calendaring the due dates are administrative tasks that could and should be done by a nonlawyer. "[P]urely clerical or secretarial tasks should not be billed at a paralegal or lawyer's rate, regardless of who performs them." *Davis*, 976 F.2d at 1543 (quoting *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989)); *see also Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (finding that "filing, transcript, and document organization time was clerical in nature and should have been subsumed in firm overhead rather than billed at paralegal rates"); *Constantinovici v. Bondi*, No.: 3:25-cv-02405-RBM-AHG, 2026 WL 2020467, at *4 (July 13, 2026) (reducing hours for similar clerical billing entries). Because a nonlawyer can perform such tasks, at a fraction of the cost, it is not reasonable to award recovery of these expenses under either the statutory or the market rate. *Id.* Additionally, the Court finds that the requested fee for attorney Nicole Gamble observing her co-counsel's oral argument is unreasonable. Petitioner's counsel seeks double compensation for the same hearing: one attorney's fee for presenting oral argument, and a second attorney's fee for merely observing that argument. ECF No. 14-2 at 2. This expenditure is unwarranted and effectively results in duplicative recovery for the same underlying cost. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1113 (9th Cir. 2008) (holding that a court may reduce hours when they are the product of unnecessarily duplicative work).

//

The Court disagrees with Respondent's assertion that the invoices for the internal meetings between the attorneys is unreasonable. Opp'n at 5. There are only three invoices for internal meetings amongst the Petitioner's attorneys to discuss case strategy, amounting to a total of 1.17 hours out of the total 36.24 hours. ECF No. 14-2 at 1-2. Considering the limited amount of time claimed, the Court finds that this sought-after fee is not excessive or otherwise concerning. The Court is mindful that, "[b]y and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112; *See also Nadarajah*, 569 F.3d at 925 ("[a] fair amount of conferencing among attorneys was reasonable for [a case] of this complexity").

The Court finds that the invoices for the filing of the habeas petition (0.1 hours), both instances of calendaring due dates for the returned order (total of 0.2 hours for both) and delegating the service packet to be mailed (0.34 hours) were unreasonable. Additionally, the Court finds that the invoice for observing the oral argument hearing (0.75 hours) was not necessary. The Court, therefore, reduces Petitioner's reported hours by 1.39 hours, and finds that 34.85 hours at the statutory rate of $258.46 per hour ($9,007.33) was reasonable given the complexity of this matter. Petitioner's 1.05 hours of certified paralegal time at the market rate of $150.00 per hour ($157.50) and $64.33 in additional costs are not challenged on reasonable grounds and are also awarded. *See Ortiz Landazuri*, 2026 WL 2326095, at *5 (awarding paralegal fees and costs including filing fee, postage, copying, and other expenses as recoverable under 28 U.S.C. §§ 2412(a), (d)(1)(A)).

**2. Petitioner's Counsel does not Qualify for an Enhanced Fee Award**

Enhanced hourly rates can be awarded, under the EAJA, when a case requires an attorney with specialized skills or knowledge, that are essential to the case and cannot be obtained at the statutory rate. *Nadarajah*, 569 F.3d at 912; *Thangaraja*, 428 F.3d at 876. A "qualified attorney" does not refer to an experienced and useful lawyer in any litigation, rather the lawyer must uniquely possess specialized knowledge or skills that are suited for the needs of a particular case. *Pierce v. Underwood,* 487 U.S. 552, 572–73 (1988).

One of Petitioner's attorneys asserts to be a certified specialist in immigration law but fails to explain how their purported specialized expertise was necessary to resolve this case. *See generally Pirus v. Bowen,* 869 F.2d 536, 540–41 (9th Cir. 1989) (justifying fee enhancement under EAJA due to counsel's unique expertise in complex social security law and lack of qualified attorneys); *Pierce*, 487 U.S. at 573–74 (remanding for recalculation of fees without enhancement as the litigation challenging the decision not to implement a housing subsidy program did not require specialized expertise). Respondents argue that the robust online resources available for assistance in filing habeas petitions renders any need for expert assistance, in such a matter, unnecessary. Fees Opp. at 10. While the Court does not fully agree with this stance, the outcome of the Petition did not hinge on the display or use of any specialized knowledge or skills related to immigration law that a typical immigration lawyer does not possess. This case is distinguishable from *Constantinovici v. Bondi*, 806 F. Supp. 3d at 1155, where an enhanced rate was warranted because the litigation involved complex post-removal detention under § 1231 that required constitutional and regulatory analysis well beyond routine immigration practice—resulting in a published decision cited in over 450 subsequent cases. The present matter, by contrast, involves a pre-removal detention challenge under § 1226(a) that, by late 2025, had become a recurring area of district court litigation throughout this Circuit and required no esoteric nooks or crannies of immigration law to resolve.

Accordingly, the Court finds that Petitioner's attorneys fail to show that this case required an attorney with specialized immigration law skills or knowledge that were essential to the matter. Thus, Petitioner's counsel does not qualify for an enhanced attorney award.

**3. Petitioner is not Entitled to the Market Rate**

Under the common law, a court may award attorney fees and costs where a party has acted in bad faith or for oppressive reasons. *Rodriguez v. County of Los Angeles*, 542 F.3d 699, 709 (9th Cir. 2008). Recklessness alone does not constitute bad faith, but where the government knowingly or recklessly raises a frivolous argument for an improper purpose,

a finding of bad faith is warranted. *See Id.*; *Primus Auto. Fin. Servs, Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997); *In re Keegan Mgmt. Co., Sec. Litig*., 78 F.3d 431, 436 (9th Cir. 1996). A frivolous argument is one that is baseless or made without reasonable inquiry. *Caputo v. Tungsten Heavy Powder, Inc*., 96 F.4th 1111, 1155 (9th Cir. 2024); *see also In re Girardi,* 611 F.3d 1027, 1060–61 (9th Cir. 2010) (sanctioning attorneys who recklessly raised a false claim and then continued to litigate it for years without verifying its validity); *Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) (holding that sanctions were appropriate when a reasonable investigation would have revealed plaintiff's civil right claim was barred by the statute of limitations), or so weak as to objectively suggest an improper purpose. *Caputo,* 96 F.4th at 1155.

Petitioner argues the government's reliance on a concurring opinion in *Jennings* in support of its jurisdictional argument constitutes bad faith because it squarely conflicts with the Supreme Court's majority opinion. Mot. 9–12; *Jennings,* 583 U.S. at 293. In response to the Petition, Respondents argued that the Court lacked jurisdiction under 8 U.S.C. § 1252(b)(9) and § 1252(g). Return at 2–5. In the Return, Respondents argued that because Petitioner's claims arose from the Attorney General's decision to remove him, they must therefore be "channeled" into the Court of Appeals. Return at 2–3. To support this assertion, Respondents quoted Justice Thomas's concurrence in *Jennings* stating that detention is a part of the removal process and, therefore, this action falls under the statutes' "arise from" language. *See Jennings,* 583 U.S. at 318 (Thomas, J., concurring); Return at 4. Justice Thomas, joined by Justice Gorsuch, avers that virtually any claim related to agency action to remove a noncitizen, is barred by 8 U.S.C. § 1252(b)(9) and § 1252(g). *Jennings,* 583 U.S. at 318 (Thomas, J., concurring). Thus, district courts are stripped of any jurisdiction to hear such claims. *Id.* The plurality in *Jennings* rejected this, stating the statutes "arising from" language is not to be read literally. *Id.* at 291–92. These statutes' applicability depends on "whether the legal questions [before the court] 'arise from' the actions taken to remove these aliens." *Id.* at 293 (cleaned up).

The authority Respondents cited was, at best, an alternative view of the law and is not controlling. The plurality decision in *Jennings* confirmed that district courts retain jurisdiction over claims under §§ 1252(b)(9) and (g) that are unrelated to the decision to detain or remove a particular individual. The Court acknowledged that the recent policy shift resulting from *Yajure-Hurtado* and the DHS memo created instability in immigration law. During such periods of instability, the law encourages novel arguments to further clarify what the law means. However, the precedent set by *Jennings* was not called into question by the *Yajure-Hurtado* decision. Sections 1252(b)(9) and (g) are jurisdiction-stripping statutes that channel claims arising from the removal process to the courts of appeals; they do not bar district court review of detention claims—like Petitioner's—that challenge a pre-removal detention policy. Respondents' jurisdictional argument accordingly lacks merit. *See Constantinovici*, 806 F. Supp. 3d at 1162–63 (rejecting the government's proposed interpretation of the jurisdiction-stripping statutes in a materially identical re-detention challenge and finding that those provisions do not bar review of pre-removal detention claims).

The Court cannot definitively say that Respondents' conduct amounted to bad faith. On the one hand, Respondents' argument was weak and arguably reckless, as its basis—*Jennings*' concurrence—seems to reflect a disregard for settled law. But on the other hand, Respondents' argument was not wholly frivolous. Respondents did, in fact, state the correct standard set forth in *Jennings*. Return at 3–4. Respondents attempted to distinguish this case from *Jennings* by arguing that Petitioner was not challenging the underlying policy but rather the decision to remove him. *Id.* at 4. Respondents also correctly stated that if this were the case, then under *Jennings*, the Court would lack jurisdiction to hear this claim. *Id.* It is unclear to the Court whether Respondents' reliance on *Jennings'* concurrence sought to misstate the law or simply support for their position that Petitioner was contesting the decision to remove him.

In sum, Respondents' reliance on *Jennings'* concurrence was questionable; it is unclear whether it reflects an intentional or reckless misstatement of the law or merely an

effort to bolster their characterization of Petitioner's claim as a challenge to the detention decision itself. As a result, the Court does not find that Respondents' litigation conduct amounts to bad faith. *See Ortiz Landazuri*, 2026 WL 2326095, at *4 (declining bad-faith market-rate enhancement where the record did not support a finding of bad faith). And the Court is, therefore, unable to award Petitioner's counsel attorneys' fees at the market rate. Thus, recovery of attorneys' fees at the statutory rate is warranted.

EAJA fee awards are payable to the litigant, subject to offset for any federal debt; the Government may pay counsel directly if no offsettable debt exists. *Astrue v. Ratliff*, 560 U.S. 586, 589 (2010).

## IV. CONCLUSION

Based on the forgoing, Petitioner's Motion for an Award of Attorney's Fees and Costs is **GRANTED** and **ORDERS** the following:

(1) The Request for an Award of Statutory-rate fees is **GRANTED**. The Court, however, reduces Petitioner counsel's reported hours by 1.39 hours.

(2) Respondents are **ORDERED** to pay $9,229.16 to Petitioner within 60 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: September 29, 2026

Honorable James E. Simmons Jr.
United States District Judge